# IN THE COURT OF APPEALS OF IOWA

No. 23-0681
Filed July 3, 2024

**PATRICK LAVERN HOLT,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Cerro Gordo County, Colleen Weiland, Judge.

An applicant appeals the denial of postconviction relief. **AFFIRMED.**

Karmen Anderson, Des Moines, for appellant.

Brenna Bird, Attorney General, and Richard J. Bennett, Special Counsel, for appellee.

Considered Badding, P.J., Bower, S.J.,* and Gamble, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2024).

**GAMBLE, Senior Judge.**

Patrick LaVern Holt appeals the denial of his application for postconviction relief (PCR). Because he failed to establish prejudice in the outcome of his trial, Holt has not met his burden for his ineffective-assistance-of-counsel claims.

## I. Background Facts & Proceedings.

In 2014, Holt befriended A.K. and her ten-year-old daughter. A.K. and the child visited Holt frequently that summer. Holt bought the child clothing, swimwear, and gifts, and took the mother and child on a couple daytrips over the summer. According to the child, one day A.K. left her with Holt while she ran an errand, and Holt took the child up to an upstairs bedroom. Holt played a pornographic video on the computer, rubbed his penis, then touched the child's vulva on top of and then underneath her clothing for "about a minute." A.K. returned to the house, and the child ran down to meet her. A.K. testified the child was hysterical and sobbing at the door and said Holt had touched her.

The incident was reported to the authorities a few years later. In 2018, a jury found Holt guilty of lascivious acts with a child—fondle or touch. This court affirmed his conviction on appeal, finding the verdict "was not contrary to the weight of the evidence," an expert's testimony describing grooming behaviors and delayed reporting "did not constitute improper vouching," the inclusion of an intent instruction was not an error, and the court did not abuse its discretion when sentencing him. *State v. Holt*, No. 18-1266, 2019 WL 5067171, at *4–6 (Iowa Ct. App. Oct. 9, 2019). Additional facts specific to Holt's current claims are included where relevant below.

In May 2020, Holt filed an application for PCR, in which he asserted he possessed photos showing his "medical condition making alleged incidents impossible." An amended application was filed with help from counsel, alleging ineffective assistance of trial counsel from failure to properly question him on direct examination at trial about the deterioration of his relationship with A.K. The PCR court held Holt did not establish prejudice on either claim, so it denied and dismissed his application.

Holt appeals on both issues.

## II. Standard and Scope of Review.

"A PCR application alleging ineffective assistance of counsel raises a constitutional claim, and we review postconviction proceedings that raise constitutional infirmities de novo." *Sothman v. State*, 967 N.W.2d 512, 522 (Iowa 2021) (cleaned up) (citation omitted).

> To establish ineffective assistance of counsel, [an applicant] must demonstrate . . . counsel failed to perform an essential duty that resulted in prejudice. Counsel breaches an essential duty when counsel makes such serious errors that counsel is not functioning as the advocate the Sixth Amendment guarantees. We presume counsel acted competently but that presumption is overcome if we find [the applicant] has proved . . . counsel's performance fell below the normal range of competency. If the claim lacks prejudice, it can be decided on that ground alone without deciding whether the attorney performed deficiently.

*Id.* (internal quotation marks and citations omitted). "It is not enough for the defendant to show that the errors had only some effect on the outcome of the proceeding. Instead, typically, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Smith v. State*, __ N.W.3d ___, ___, 2024

WL 2868782, at *2 (Iowa 2024) (cleaned up) (internal citation omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Doss v. State*, 961 N.W.2d 701, 709 (Iowa 2021) (cleaned up).

### III. Analysis.

*A. Photographs.* Holt asserts trial counsel's failure to present the photographs from his medical records exhibiting his "buried penis syndrome" was a breach of duty that prejudiced his trial. Holt argues the photographs were "relevant and probative" and "would have been a powerful tool in corroborating [the] testimony" of Holt and his doctor.[1] But during Holt's testimony at the PCR trial, his attorney asked, "Do you believe the result of your trial would have been different had those medical photographs been introduced?" And Holt answered, "No."

At the underlying trial, the deposition of a surgeon who had operated on Holt in 2017 for his buried penis syndrome was read to the jury. The doctor explained what the syndrome is and stated that despite a 2001 surgery, at the time of Holt's 2017 surgery, "I would say the only thing that you could see, reasonably see when I first met him was the glans penis, which is the head of the penis. The doctor stated that, before the surgery, it was not possible to reach down to the rest of the penis. The doctor also explained, "[Y]ou can still have an erection . . . you don't actually see it. It's kind of trapped underneath the skin." Holt could "occasionally get erections but not reliably." But the development of the syndrome

---

[1] The photos were not offered as evidence at the PCR trial either.

was "a long process, it doesn't happen overnight." The doctor, who first saw Holt in 2017, could not testify what Holt's state was in 2014.

Holt told the PCR court there were photos from his 2001 surgery and that they would have depicted his condition in 2014. The surgeon who operated on Holt in 2017 testified he did not have photographic documentation of what Holt's condition looked like. Holt's trial counsel testified via deposition that the pictures "were actually during [the 2017] surgery from the medical records" and she did not have any "before pictures." She explained she didn't use the photographs "because they were all taken after the incident." Counsel stated she did not think the photographs would have changed the outcome of Holt's trial. The PCR court found the evidence presented at Holt's criminal trial sufficiently explained his condition, and it was not convinced "that seeing photographs of his condition would have added anything helpful to Holt."

Holt failed to introduce the photographs into evidence at the PCR trial, so we are left to speculate on when they were taken and what they depict. The photographs of Holt's condition—which worsened over time—were taken either thirteen years before or three years after the accused incident, and the photos were taken during corrective surgery. The surgeon described Holt's condition in detail. We do not believe these photographs would have provided the jury any additional insight as to what the child would have seen. Also, the version of lascivious acts Holt was convicted was his fondling or touching the child's genitals, not the child touching him. We are not persuaded the admission of marginally relevant photographs, which would not tend to prove or disprove any element of

the relevant offense, would have led to a different result.  *See Smith*, 2024 WL 2868782, at *2.

*B. Direct Examination.*  For his claim about counsel's direct examination of him, Holt urges counsel should have done more to bring out the breakdown of his relationship with A.K. as relevant for the jury's credibility determination.  Because the case was largely decided based on credibility, Holt argues this failure was prejudicial based on a reasonable probability the jury would have doubted A.K.'s testimony.  He further argues that counsel's failure to develop evidence supporting a theory of defense mentioned during opening statement "breeds mistrust of counsel and consequently defendant."

Holt told police in his initial interview that he and A.K. had "a falling out" because "she had been taking his prescription medicine."  When questioned, A.K. did not remember saying the friendship broke down because of drugs, admitting "I had just been arrested; and to be completely honest, I was coming down off of drugs.  I don't remember saying that."  At the PCR trial, Holt opined the child's accusation was "their way of retaliating" because "they were no longer to come to my house."

Even if counsel's failure did constitute a breach, we agree with the PCR court that Holt has not established prejudice.  At most, Holt's testimony would have reflected on A.K.'s credibility.  Holt's counsel had already questioned A.K. about her use of Holt's prescription medications, and she had admitted to having drug offenses and "coming down off drugs" when she spoke with police.  But it was the child's testimony about what happened, not the mother's, which provided the factual basis for Holt's conviction.  Calling the mother's credibility into question

does not affect the credibility of the child and does not materially undermine our confidence in the trial's outcome. *See Doss*, 961 N.W.2d at 709.

To the extent Holt suggests the mother and child were retaliating for the loss of the gifts and benefits Holt provided and A.K.'s access to Holt's prescription drugs, the circumstances following the incident persuade us otherwise. First, there was evidence presented at the original trial about common grooming tactics to gain trust and eventually access to the child—including gifts and other benefits, physical contact, touching, and showing pornography. Also, the child had only reported the incident one year before the trial—three years after the incident, which tends to negate the idea of retaliation. Moreover, the child had been moved to her father's custody around two and a half years earlier, and A.K. testified she had not spoken to the child in around three years, minimizing the likelihood of coaching or collusion.

Holt has not established his testimony about the breakdown in his friendship with A.K. would have affected the outcome of the trial. Because he has not established counsel's actions were prejudicial, Holt has not proved counsel was ineffective.

**AFFIRMED.**